IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES MCQUILLEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15 C 9953 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| PETSMART, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff James McQuillen brought a two count complaint against his former employer, defendant PetSmart, Inc., in the Circuit Court of DuPage County, Illinois, alleging that his termination was (1) based on disability discrimination in violation of the Illinois Human Rights Act, 775 ILCS 5/2-102(A), and (2) interfered with his rights under the Family Medical Leave Act, 21 U.S.C. § 2615(a)(1). Defendant removed the case to this court and has now moved for summary judgment on both counts. For the reasons described below, defendant's motion is granted.

## **FACTS**[1]

Plaintiff began working for defendant on February 18, 2013, as a Presentation Manager. At the time of his hire he had been diagnosed with major depressive disorder, generalized anxiety disorder and alcoholic dependency disorder. He did not inform defendant of this diagnosis at the time he was hired, or any time thereafter. He performed his job with no problems from the date of his hire until April 13, 2014.

---

[1]The facts are taken from the parties' L.R. 56.1 statements and the court's review of the depositions and exhibits on file.

Plaintiff failed to report for work on April 14, 2014. He did not call or otherwise inform defendant that he was unable to report. When he did not report the following day, April 15, 2014, his store manager, Matthew Troka, attempted to call plaintiff's wife, Theresa McQuillen. Theresa returned Troka's call and told him that plaintiff was "passed out drunk." Troka told her about defendant's Employees Assistance Program, but Theresa made no effort to look in to it. She spoke to Troka twice more that day, once to inquire about where she could take their dog, and once to ask about plaintiff's job, and whether he was terminated because she needed to know about health insurance. Troka helped with the dog, but told her he could not talk about plaintiff's job and that she needed to talk to Human Resources ("HR"). During one of these conversations she told Troka something like plaintiff had been lying in bed drunk for three days.

As it turns out, plaintiff had attempted to drink himself to death starting either on April 13 or April 14. Theresa testified that she came home from work on Monday the 14th, and found plaintiff passed out drunk on the bed, with alcohol around him. She could not wake him. She did not know what to do so she called a friend and spent the night at the friend's house. She went home first thing Tuesday morning, April 15, and found plaintiff still passed out drunk. She checked on his breathing and took the dog out. When she came back home at lunch, plaintiff was still passed out. She checked on his breathing, took the dog out and went back to work. She returned after work, and plaintiff was still passed out. She checked his breathing and took the dog out. The following day, plaintiff was still passed out drunk in his bed. Theresa continued to check on him, but did not call 911 and did not call defendant again.

Theresa went to work on the April 17. Plaintiff's sister, Jennifer Cook, with whom Theresa had been in contact, called and said that she thought that they should take plaintiff to the

hospital. Theresa met Jennifer at the home, helped her get plaintiff, who was still passed out, into a car, and Jennifer took plaintiff to the hospital. Theresa met them there.

On April 18, plaintiff, no longer totally incapacitated, called Troka. Plaintiff is unclear of the date and cannot remember any specifics of his conversation with Troka. It is unclear if plaintiff told Troka that he was hospitalized, but Troka testified that plaintiff did not tell him that. Troka claims that he told plaintiff in that conversation that his employment had been terminated.

Plaintiff spoke with Sean Parker of defendant's HR department on April 21. Plaintiff claims that Parker told him that he was working with the legal team to see what the next steps were. Parker testified that he told plaintiff that he needed to research the situation to understand what happened. Plaintiff spoke with Parker again on April 25, 2014, and claims that it was in that conversation that he was first informed of his termination. In that conversation, Parker informed plaintiff about defendant's leave of absence policies, but told plaintiff that he had been terminated effective April 16, 2014. Plaintiff asked about insurance and was told that he would get a COBRA packet in the mail.

## **DISCUSSION**

Defendant has moved for summary judgment. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing both elements, Becker v. Tenebaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir. 1990), and all reasonable inferences are drawn in the non-movant's favor. Fisher v. Transco Services - Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992). If the movant satisfies its burden, then

the non-movant must set forth specific facts showing there is a genuine issue for trial. Nitz v. Craig, 2013 WL 593851, *2 (N.D. Ill. Feb. 12, 2013). In doing so, the non-movant cannot simply show some metaphysical doubt as to the material facts. Pignato v. Givaudan Flavors Corp., 2013 WL 995157, *2 (N.D. Ill. March 13, 2013) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Summary judgment is inappropriate when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Because the parties focus their briefs on plaintiff's FMLA claim, the court begins there. Under the FMLA, eligible employees are entitled to up to 12 weeks of unpaid leave per year for absence due to a "Serious Health Condition" that renders the employee unable to perform the functions of his job. 29 U.S.C. § 2612(a)(1); Darst v. Interstate Brands Co., 512 F.3d 903, 908 (7th Cir. 2008). It is "unlawful for any employer to interfere with, restrain, or deny the exercise or the attempt to exercise, any right provided." 29 U.S.C. § 2615(a)(1). When an employee alleges a substantive FMLA violation, it is the employee's burden to establish, by a preponderance of the evidence, and entitlement to the disputed leave. Darst, 512 F.3d at 908.

To establish his claim, plaintiff must show: (1) he was entitled to FMLA leave; (2) was covered by the FMLA; (3) he was entitled to FMLA leave; (4) he provided sufficient notice of his intent to take leave; and (5) defendant denied him FMLA benefits to which he was entitled. Brown v. Auto Components Holding, LLC , 622 F.3d 685, 689 (7th Cir. 2010). Interference with an employee's FMLA rights is not a violation if the employer had a legitimate reason for its actions. McLaren v. Wheaton Coll., 2016 WL 3671448, *10 (N.D. Ill. July 11, 2016) (whether the defendant has a legitimate reason for terminating the plaintiff is relevant because when an

4

employer decides to terminate an employee who fails to meet expectations, the employee is not entitled to leave under the FMLA.).

In the instant case, based on the undisputed facts, plaintiff cannot show that he was entitled to leave, that he provided sufficient notice of his need for leave, or that defendant even knew of plaintiff's medical condition when it terminated his employment.

First, it is undisputed that defendant has an attendance policy that provides that "in the case of non-notification, after two consecutive scheduled days of unexcused absence, the Company will assume the associate has abandoned the job, and has voluntarily resigned." It is also undisputed that plaintiff was absent from work on April 14, 15 and 16. Those absences were unexcused and without notification. Indeed, the only information defendant had was from Theresa's April 15th call to Troka where she informed his that plaintiff was "passed out drunk" and had been for an "extended period." Despite plaintiff's attempts to show otherwise, at no time between April 14 and at the earliest April 21, did anyone ever inform defendant that plaintiff was hospitalized or that he wanted to take any form of leave. Theresa consistently and repeatedly testified that she told defendant that she did not know what plaintiff wanted. The undisputed evidence is that there was never any mention of FMLA until after plaintiff left the hospital and went into rehab. There is certainly no evidence of a request for any kind of leave or accommodation for the period before plaintiff entered the hospital.

Nor was plaintiff entitled to FMLA for the three unexcused absences. A "Serious Health Condition" is defined as an illness, injury, impairment, or physical or mental condition that involves either: (1) inpatient care in a hospital, hospice, or residential medical facility; or (2) continuing treatment by a healthcare provider. 29 U.S.C. § 2611(11). Substance abuse may

qualify as a serious health condition "under certain conditions, but FMLA leave may be taken only for treatment for substance abuse." Darst, 512 F.3d at 908. "On the other hand, absence because of the employee's use of the substance, rather than for treatment, does not qualify for FMLA leave." Id. Thus, plaintiff would be entitled to FMLA leave only for the period beginning April 17, when he was hospitalized. As in Darst, however, he has not and cannot provide any explanation that would excuse his absence from work for the three prior days. Because he was not in treatment those days, he was not entitled to FMLA leave for those days. As in Darst, defendant was entitled to and did terminate plaintiff's employment as a result of those unexcused absences. Plaintiff has presented no evidence that defendant made the decision to terminate plaintiff after learning of his hospitalization. Because the termination was legitimate, defendant cannot be liable for interference with FMLA rights. See McLaren, 2016 WL 3671448 at *10 ("An employer that would have taken action against an employee regardless of whether she took FMLA leave is not guilty of FMLA interference." ).

Finally, the discussion above demonstrates that defendant is also entitled to summary on plaintiff's disability discrimination claim. There is simply no evidence that plaintiff was terminated because of a disability. Indeed, the overwhelming evidence is that defendant hid his diagnosis from defendant, and that defendant had no knowledge of plaintiff's disabilities when it fired him. All defendant knew is that plaintiff missed three straight days of work due to being passed out drunk.

Moreover, even if defendant could be held to knowledge of plaintiff's disabilities, defendant still had the right to terminate plaintiff for failing to come to work, even if the failure was because of his substance abuse. See Payton v. Otis Elevator, 72 F.Supp.2d 915 (N.D. Ill.

1999)("So long as the reason for discharge was for conduct that any person would have been disciplined for doing, the fact that alcoholism may have caused the conduct does not lead to an ADA violation.").[2] Under the circumstances of this case, plaintiff's alcoholism and his depression does not transform unexcused absences into acceptable ones. Consequently, defendant is entitled to summary judgment on plaintiff's disability discrimination claims.

## CONCLUSION

For the reasons described above, defendant's motion for summary judgment (Doc. 28) is granted.

**ENTER:**     **February 16, 2017**

                                                                          _____
                                                                          **Robert W. Gettleman**
                                                                          **United States District Judge**

---

[2] Disability discrimination claims under the IHRA are analyzed using the same test employed by federal courts analyzing claims under the Americans with Disabilities Act. Zaderaka v. Ill. Human Rights Comm'n, 131 Ill. 2d 172, 178-79 (1989).